IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville March 26, 2014


**LAKEISHA MARGARET WATKINS v. STATE OF TENNESSEE**


**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3224     Cheryl Blackburn, Judge**

---

**No. M2013-01381-CCA-R3-PC - Filed April 10, 2014**

---

Petitioner, Lakeisha Margaret Watkins, was convicted by a jury of four counts of aggravated child abuse, two counts of aggravated child neglect, and one count of attempted child neglect. The trial court sentenced her to an effective sentence of forty years. On appeal, this court reversed and dismissed one of the aggravated child neglect convictions based on insufficient evidence. *State v. Lakeisha Margaret Watkins*, No. M2009-02607-CCA-R3-CD, 2011 WL 2682173, at *1 (Tenn. Crim. App. July 8, 2011), *perm. app. denied* (Tenn. 2011). Petitioner's sentence was unaffected by this court's decision. In her post-conviction petition, petitioner alleged that she received ineffective assistance of counsel. The post-conviction court denied her petition, and she now appeals from that denial. Specifically, petitioner argues that trial counsel should have moved to suppress petitioner's statements to police, that he did not ensure she understood the significance of her decision not to testify at trial despite being aware that she had a learning disability, and that he should have called a witness at trial or at the sentencing hearing to testify about her learning disability. Following our review, we affirm the judgment of the post-conviction court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Lakeisha Margaret Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

### A. Trial

This case involves the abuse and neglect inflicted on C.W.,[1] petitioner's young son, by petitioner's boyfriend, Christopher Watts, and by herself on multiple occasions in 2007. *Id.* On April 16, 2007, petitioner left her son with Watts while she went to the dentist. *Id.* at *3. When she returned, Watts told her that C.W. had fallen. *Id.* Some seven hours later, after noticing C.W. was not acting normally, petitioner had a neighbor call 9-1-1. *Id.* at *3, 8, 11. At trial, a doctor testified that he suspected child abuse when he treated C.W. for multiple bruises and a possible concussion. *Id.* at *2. The doctor opined that C.W.'s injuries would not have been caused by a fall and that the delay in treatment "could have led to severe complications." *Id.* For this incident, the jury convicted petitioner of attempted child neglect. *Id.* at *16-18. After C.W. was released from the hospital, he lived for several weeks with his grandparents in another city, but eventually, C.W. returned to petitioner's home. *Id.* at *3, 13.

On June 15, 2007, paramedics responded to petitioner's home because C.W. was not breathing. *Id.* at *4. In interviews with the police, petitioner detailed the events leading up to the June 15 emergency incident. *Id.* at *9-12. Petitioner recalled seeing Watts pushing C.W., jerking his arm, and causing him to fall. *Id.* On or around June 13, C.W. had a seizure but recovered. *Id.* at *7. The day of the emergency incident, C.W. had multiple seizures. *Id.* A doctor testified that when C.W. arrived at the emergency room on June 15, he had multiple brain injuries of different ages, retinal hemorrhages, and a fractured ulna. *Id.* at *6. The doctor further testified that the fractured ulna showed signs of healing and opined that the fracture occurred one to two weeks before C.W.'s hospitalization. *Id.* For her part in C.W.'s injuries in June 2007, the jury convicted petitioner of three counts of aggravated child abuse and two counts of aggravated child neglect. *Id.* at *16, 18-21, 24-25. This court, however, reversed petitioner's conviction for aggravated child neglect premised on her conduct in failing to seek medical attention after C.W.'s seizure on or around June 13. In doing so, this court concluded that there was insufficient evidence that her failure to seek medical attention on that date caused a serious bodily injury in addition to the serious bodily injury C.W. suffered as a result of his seizures on June 15, which supported the other count of aggravated child neglect. *Id.* at *25. Petitioner's final conviction for aggravated child abuse was supported by proof that petitioner whipped C.W. with a belt, which was considered to be a deadly weapon under the circumstances. *Id.* at *16, 22-24.

---

[1] It is the policy of this court to refer to minor victims by their initials to protect their privacy.

At trial, petitioner did not testify. *Id.* at *1-14. However, her videotaped interviews with the police were played for the jury. *Id.* at *8-13. In addition, her parents testified on her behalf. *Id.* at *13-14. Of particular note for the purposes of this opinion, petitioner's father testified that petitioner graduated from high school with a Special Education diploma, that she read and wrote on a second grade level, and that she became easily confused. *Id.* at *13.

The trial court sentenced petitioner as follows for a total effective sentence of forty years[2]:

| Ct. | Conviction | Sentence | Alignment |
|---|---|---|---|
| 2 | Attempted Child Neglect | 11 mo./ 29 days | Concurrent with all |
| 3 | Aggravated Child Abuse | 20 years | Concurrent with Counts 4 & 5 |
| 4 | Aggravated Child Neglect | 20 years | Concurrent with Counts 3 & 5 |
| 5 | Aggravated Child Neglect | 20 years | Reversed on appeal |
| 6 | Aggravated Child Abuse | 20 years | Concurrent with Counts 7 & 8 Consecutive to Counts 3-5 |
| 7 | Aggravated Child Abuse | 20 years | Concurrent with Counts 6 & 8 Consecutive to Counts 3-5 |
| 8 | Aggravated Child Abuse | 20 years | Concurrent with Counts 6 & 7 Consecutive to Counts 3-5 |

B. Post-Conviction

Petitioner filed a document entitled "Petition for a Writ of Habeas Corpus" on September 20, 2012. Subsequently, the post-conviction court treated the petition as stating a colorable claim for post-conviction relief. The post-conviction court appointed counsel, who filed an amended petition for post-conviction relief on January 9, 2013. In the amended petition, petitioner alleged that she received the ineffective assistance of counsel before and during trial. In particular, she asserts that trial counsel did not adequately apprise her of "the merits and drawbacks of testifying or not testifying at her trial" and that he did not consult

---

[2] Only Christopher Watts was charged in Count 1 of the indictment. Both were charged in Counts 2 through 7, and only petitioner was charged in Count 8.

with her regarding pre-trial motions. With regard to the second allegation, petitioner contends that trial counsel should have moved to suppress her pre-trial statements to police. Petitioner also argued at the post-conviction hearing that trial counsel should have presented an expert witness to testify about her learning disability.

At the post-conviction hearing, petitioner testified that she believed trial counsel should have had her statements to the police suppressed because she was coerced. She explained that she did not understand what she was doing when she spoke to the police before hiring an attorney. Petitioner further testified that she believed the video of her statements had been "thrown out, and then they pulled them back in as evidence." Petitioner said that she "wish[ed] [she] had made a different decision" about testifying at trial because she did not understand the decision. She stated that she had dyslexia, which affected her by limiting her "understanding of things." Petitioner believed that trial counsel should have had a doctor testify at trial about her learning disability. She said that her chief complaint was the length of her sentence and that she believed trial counsel's performance contributed to the length.

On cross-examination, petitioner said that she believed all of her statements to the police were coerced. She stated that the police did not read her *Miranda*[3] rights to her and that she did not actually read the paper that they gave her because of her learning disability. Petitioner testified that she did not tell trial counsel that he should have moved to suppress her statements and that she did not realize he should have until after the trial. She further testified that she lied in her statements about harming her child but not about Watts harming him. She agreed that she testified at Watts's trial but could not recall whether she testified truthfully. Petitioner said that trial counsel had been aware of her learning disability but not that she did not understand the *Miranda* warnings. Petitioner testified that it was her decision to go to trial and reject the State's offer of eighteen years. She agreed that she knew she might get a longer sentence by going to trial. Petitioner stated that at the time of her trial, she was unable to obtain her records showing that she had a learning disability. She said that she had the records at the time of the post-conviction hearing. However, the records were not introduced into evidence.

Trial counsel testified that he became licensed to practice law in 2005 and that he primarily practiced criminal defense law. He stated that he was retained by petitioner's family to represent her. He further stated that he worked for over 120 hours on petitioner's case and that his investigator worked for over 100 hours. Trial counsel testified that he did not find any legal basis to exclude petitioner's statements to the police. The two interviews that the police had recorded began with *Miranda* warnings. Trial counsel agreed that

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

petitioner ended the second interview by demanding an attorney and that she initiated the third interview herself. He stated that he did not have a reason to challenge the voluntariness of the statements and agreed that petitioner had not been in custody when she gave her statements. Trial counsel testified that he discussed petitioner's decision whether to testify at trial with her at length. In addition, he recalled that the trial court questioned petitioner on the record during trial about whether she would testify. He further testified that he had been aware of petitioner's learning disability and had received records regarding the disability. However, while he did not believe it was relevant to her case, he nonetheless questioned her father about her learning disability, both at trial and at sentencing.

On cross-examination, trial counsel testified that he did not have petitioner evaluated for competency and that he never experienced difficulty in explaining things to her. He said that petitioner never told him that her statements to police were coerced, although she admitted to him that she did not "understand the implications of going in and conducting an interview with police officers without having an attorney present with her." Regarding the recordings of the interviews, trial counsel explained that he and the prosecutor agreed to have portions of the interviews redacted. The redacted portions were not shown to the jury.

The post-conviction court denied relief. In its written order, the post-conviction court found that petitioner failed to establish that trial counsel did not "effectively inform her about her right to testify at trial" or that she was prejudiced by any deficiency in this regard. The post-conviction court specifically accredited trial counsel's testimony about this issue and stated that the trial transcript corroborated that the trial court also discussed with petitioner her decision not to testify. The post-conviction court also noted that while petitioner never said what her testimony would have been, petitioner testified at Watts's trial. The post-conviction court included that testimony in its written order. In addition, the post-conviction court found that petitioner failed to establish trial counsel's ineffectiveness regarding the suppression of petitioner's statements. In particular, the trial court noted that petitioner's testimony established that she was not coerced when she confessed that she knew Watts had harmed her child because she did so in the third interview, which she initiated. Furthermore, the post-conviction court credited trial counsel's testimony that he did not find a legal basis to challenge the statements. The post-conviction court stated that the police gave petitioner *Miranda* warnings prior to the two recorded interviews and that petitioner was not in custody during the interviews. Finally, the post-conviction court found that petitioner failed to meet her burden with regard to having a doctor testify at trial about her learning disability because petitioner failed to present such a witness at the post-conviction hearing. The post-conviction court also credited trial counsel's testimony about this issue.

## II. Analysis

On appeal, petitioner contends that trial counsel provided ineffective assistance in three ways: (1) by failing to file a motion to suppress her pretrial statements to the police; (2) by not adequately apprising her of the merits and drawbacks of testifying at trial; and (3) by not having an expert testify about her learning disability at trial. The State responds that the post-conviction court properly denied relief. We agree with the State.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner's first argument is that trial counsel should have moved to suppress her statements to the police, claiming that she was coerced and that she did not understand the *Miranda* warnings because she could not read them due to her learning disability. However, she agreed that she initiated the final interview, which was the most damaging one, and that she never told trial counsel about her inability to understand the *Miranda* warnings. Trial counsel testified that he found no legal basis for challenging the statements, and the post-conviction court noted that petitioner was given *Miranda* warnings and was not in custody during the interviews. Petitioner has not produced any evidence in support of her factual claim of coercion. Thus, we are unable to review the merits of a motion to suppress the statements. Petitioner never told trial counsel that she did not understand the *Miranda* warnings, and by his testimony, trial counsel considered and decided against bringing a challenge to her statements. Based on these facts, we conclude that petitioner has not shown

that trial counsel's performance was deficient or that she was prejudiced by the failure to file a motion to suppress.

Petitioner next argues that trial counsel should have better informed her of the consequences of her decision whether to testify at trial. At the post-conviction hearing, she stated that she wished she had chosen differently. The post-conviction court credited trial counsel's testimony that he discussed the decision at length with her. The trial court also questioned her about her decision. Petitioner did not state what her testimony at trial would have been; however, her testimony from her co-defendant's trial was appended to the post-conviction court's order. That testimony is only slightly different from petitioner's third interview with the police. We conclude that petitioner has not shown that trial counsel's performance in this regard was deficient. Furthermore, she has not shown how the result of the trial would have been more favorable to her had she testified.

Finally, petitioner claims that trial counsel should have had an expert testify at trial about her learning disability. Trial counsel testified that he was aware of her learning disability, that he had no difficulty communicating with her, and that he had petitioner's father testify about her learning disability despite its lack of relevance to her case. Petitioner did not present a witness at the post-conviction hearing to testify about her learning disability. Case law is clear that to establish a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present said witness at the post-conviction hearing. *Plyant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* (quoting *Black*, 794 S.W.2d at 757). Trial counsel's testimony, credited by the post-conviction court, established that his performance was not deficient, and petitioner's failure to present a witness at the post-conviction hearing precludes a finding of prejudice for not having an expert at trial. Therefore, petitioner is without relief.

## CONCLUSION

Based on the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE